## STEED v. STEED.

No. 3330.   Decided April 2, 1919.   Rehearing Denied May 14, 1919.
(181 Pac. 445.)

1. DIVORCE—EXTREME CRUELTY JUSTIFYING DECREE—EVIDENCE.
Finding of trial court that acts of cruelty of defendant wife
complained of were the irresponsible acts of an insane mind
*held* not so clearly against the weight of the evidence as to
justify the Supreme Court in substituting another finding
therefor, in view of Comp. Laws 1917, section 2995, subd. 8,
according plaintiff a complete remedy.   (Page 248.)

2. DIVORCE—INSANE PERSONS—DEFENSES—INSANITY.   Divorce may
be had from an insane defendant for a cause of action which
accrued during defendant's sanity.   (Page 248.)

3. APPEAL AND ERROR—FINDINGS—REVIEW.   In a law case the Su-
preme Court is bound by the trial court's finding where there
is any substantial evidence in support thereof.   (Page 249.)

4. APPEAL AND ERROR—FINDINGS—REVIEW IN EQUITY CASES.   In
equity cases plaintiff is entitled to the judgment of the Supreme
Court on the evidence, and, if trial court's finding is clearly
against the evidence, it is the duty of the Supreme Court to
make or direct findings in accordance with the evidence.   (Page
249.)

5. DIVORCE—DISCRETION OF CHANCELLOR.   While ordinarily, if the
complaining party makes out a case under the statute, the
court should grant a divorce, yet there may be conditions and
circumstances under which the chancellor should exercise a
sound discretion in granting or withholding relief and in
determining the extent thereof.   (Page 249.)

Appeal from District Court, Second District, Davis Coun-
ty; *A. E. Pratt*, Judge.

Action by Ezra V. Steed against Hilda L. Steed.   Judg-
ment dismissing the complaint, and plaintiff appeals.

AFFIRMED.

*King, Braffet & Shulder*, of Salt Lake City, for appellant.

*Hancock & Barnes*, of Salt Lake City, for respondent.

FRICK, J.

In April, 1918, plaintiff commenced this action in the district court of Davis county against the defendant to obtain a divorce from her. Two causes of action are stated in the complaint. The second cause of action was, however, abandoned at the trial, and will receive no further notice. In the first cause of action the plaintiff alleged that he and defendant were married in 1906, that a child was born as the fruit of such marriage which then had attained the age of six years, and further alleged numerous and various acts of extreme cruelty covering a period commencing in February, 1907, and continuing up to the year 1911. It is not necessary to here set forth the various and numerous acts of cruelty alleged in the complaint. Plaintiff further alleged that on December 17, 1914, the defendant was duly adjudged insane, and that since that time she has been, and continues to be, confined in the state mental hospital for the insane, and that she is permanently and incurably insane. In connection with the filing of the complaint an application was also made to the district court for the appointment of a guardian ad litem for the defendant as an incompetent person. The court duly appointed a guardian ad litem who employed counsel to represent the defendant in the action. Counsel, in due time, prepared and filed an answer for the guardian ad litem in which the marriage of the respective parties and the birth of one child then living is admitted, while all the other allegations contained in the complaint are denied.

Upon these issues a trial followed, and, after finding the necessary jurisdictional facts and the birth of the child, the court found that the defendant had been guilty of various and numerous acts of extreme cruelty toward the plaintiff during the time alleged in the complaint. It is sufficient to say in that regard that the acts of cruelty found by the court are numerous, extreme, and unjustifiable. The court also found as follows:

"(6)  That on the 17th day of December, 1914, the defendant was duly and regularly adjudicated by the constituted authorities of Weber county, state of Utah, to be insane, and on said date

was committed to the State Mental Hospital at Provo, in Utah county, state of Utah, where she still is confined; that her insanity is incurable.

"(7)  That at the time of the assaults upon the plaintiff and misconduct of the defendant hereinbefore mentioned the defendant was insane, and for some time prior thereto and ever since has been insane, and the alleged acts of cruelty so committed by the defendant were due to the mental condition of the defendant aforesaid and were the irresponsible acts of an insane mind; nevertheless they caused the plaintiff great mental distress and some bodily pain and injury."

As a conclusion of law the court found "that the plaintiff is not entitled to a divorce from the defendant" and entered judgment dismissing the complaint.

We remark that the conclusion of law and judgment are based entirely upon finding 7 aforesaid, and not upon any laches or fault on the part of plaintiff.

The plaintiff appeals from the judgment, and insists that finding 7 is not supported by the evidence, and that the court erred in making the conclusion of law, in not granting plaintiff a decree of divorce, and in dismissing the complaint.

Counsel vigorously assail finding 7, which we have hereinbefore copied in full.  They insist that the evidence is conclusive that at least to and including the year 1910 the plaintiff was sane and morally and mentally responsible for all of her acts of cruelty toward the plaintiff.  They further contend that there is no evidence to the contrary.  The guardian ad litem produced no evidence at the trial.  In addition to the testimony by the plaintiff in support of his charges of cruelty from lay witnesses, he also produced medical experts who testified to the physical and mental condition of the defendant.  A physician called by plaintiff, who was personally acquainted with the defendant, in substance testified that she for years had been afflicted with epilepsy; that, as the doctor put it, "the nature of her disease is the physic type of mania"; that the disease was progressive; and that prior to the time that she was adjudged insane (December, 1914) she had many lucid intervals.  Indeed, the doctor testified that in his judgment she was sane prior to that time; that the nature of the disease she was afflicted with was incurable; that

her mental condition as well as her physical and nervous ailments were constantly progressing; and that at the time of trial she was hopelessly and incurably insane. To that effect also is the testimony of the other medical expert who testified on behalf of the plaintiff. There was also testimony that there was insanity in defendant's family on her father's side, and that she was a confirmed epileptic. Plaintiff's counsel, however, insists that under the evidence no other finding than that the defendant was sane at the time she committed the acts of cruelty is justified. They further insist that, in view of that fact, the conclusion of law to which we have referred and the judgment dismissing the complaint cannot be upheld. It is insisted that under the facts and the law applicable thereto the plaintiff is entitled to a decree of divorce. Counsel cite and rely on the following cases: *Huston* v. *Huston,* 150 Ky. 353, 150 S. W. 386; *Thomason* v. *Thomason,* 142 Ky. 176, 134 S. W. 161; *Andrews* v. *Andrews,* 120 Ky. 718, 87 S. W. 1080, 90 S. W. 581; *Lewis* v. *Lewis* (Okl.) 158 Pac. 368; *Harrigan* v. *Harrigan,* 135 Cal. 397, 67 Pac. 506, 87 Am. St. Rep. 118; *Fisher* v. *Fisher,* 54 W. Va. 146, 46 S. E. 118, 1 Ann. Cas. 251; *Douglass* v. *Douglass,* 31 Iowa, 421; *Rathbun* v. *Rathbun,* 40 How. Prac. (N. Y.) 328. They also cite 2 Bishop, Marriage, Divorce, and Separation, section 518.

In *Huston* v. *Huston,* supra, the Supreme Court of Kentucky said:

"While it is true that neither a wife nor a husband may obtain a divorce from the other on the ground of insanity, or for acts committed during such insanity (*Pile* v. *Pile,* 94 Ky. 308 [22 S. W. 215]), it is, as claimed by counsel for appellant, the well-settled law of this state that a divorce may be obtained for acts occurring prior to the insanity and constituting cause for divorce, and that the mere subsequent insanity of the defendant will not defeat plaintiff's right to a divorce, if it existed when the defendant became insane."

In *Harrigan* v. *Harrigan,* supra, the Supreme Court of California held "that divorce may be had from an insane defendant for a cause of action which accrued during the sanity of the defendant." All of the other cases cited fully support the law as it is stated in the excerpts quoted from the cases from Kentucky and California.

In 2 Bishop, Marriage, Divorce, and Separation, the author, in section 518, says:

"Divorce being a civil proceeding, and it being established practice in the civil department of our law to maintain suits against insane parties the same as against sane ones, there can be no just ground for excepting divorce cases. Both in reason and authority insanity may excuse an act otherwise unlawful, but where it does not it is no defense against the injured person's claim for redress. To deny the law's justice to the sane one because of· the other's insanity would be to cast in part on the former the burden which God had laid wholly on the latter. Divorce, where there is cause for it, is the plaintiff's right. If the defendant were sane, he could not prevent it; he has no election. Therefore it is not otherwise when he is insane."

It is not necessary to multiply cases or authorities, since counsel for the guardian ad litem concede that the excerpts we have quoted above correctly reflect the law, and that, if plaintiff's counsel are right in the contention that finding 7 is not supported by the evidence, plaintiff should have been granted the relief prayed for in his complaint. They contend, however—and the district court, it seems agreed with the contention—that if the evidence is considered as a whole, then finding No. 7 is not only justified, but is the only legitimate conclusion to be deduced from all the facts and circumstances before the court. In that connection they assert that very many of the acts of cruelty testified to by the several witnesses are of such a character, that is, were so cruel, so wicked and so unjustifiable, that no other conclusion is permissible than that they were the manifestations of an insane and disordered mind; in other words, that in view of the conditions and acts described by the witnesses, it is manifest that defendant's conduct and acts could only be the result of a greatly diseased and disordered mind. While counsel for the guardian ad litem have referred us to no court decisions, they have copiously quoted from Peterson & Haines' text-book on Legal Medicine and Toxicology, from Spratling, Epilepsy and Its Treatment, and from Savage's Dictionary of Psychological Medicine, all of which authorities may be said to, at least in a large measure, support counsel's contention.

If this were a law case, and there were any substantial evidence in support of the court's finding, we under the uniform holdings of this court, would be bound thereby. This is an equity case, however, and plaintiff is entitled to our judgment on the evidence. If, therefore, the court's finding is clearly against the evidence it is our duty to make or to direct findings in accordance with the evidence. This, it must be remembered, however, is a divorce proceeding in which the state or society is interested. In such cases the welfare of one or the other of the parties to the proceeding, as well as that of innocent children, may be, and usually is, involved. While ordinarily, if the complaining party makes out a case under the statute, the court should grant a divorce, yet there may be conditions and circumstances under which the chancellor should exercise at least a sound discretion in granting or withholding relief and in determining the extent thereof. Under such conditions the facts and circumstances of the particular case should be permitted to control the chancellor's conclusions. The case at bar in some of its features may be said to be unique, if not in a class by itself. In view of that fact we have had some difficulty in determining the nature, character, and extent of the relief that should be granted in this case, if any. While, if we were controlled by what appears from the face of the record, we should feel inclined to reverse the judgment and to grant plaintiff the relief he seeks, yet in this, as in most cases, there are many things that transpire at the trial which cannot be correctly reflected in cold print. Moreover, in this case our statute (Comp. Laws 1917, section 2995, subd. 8) affords the plaintiff a full and complete remedy by commencing an action under the provisions of that section. In such an action the state will be represented by the county attorney and the defendant by a guardian ad litem, and the best interests of the insane spouse, as well as that of all interested in the controversy, can be safeguarded and preserved. We have therefore, with some reluctance and with much hesitation, arrived at the conclusion that in view of all the facts and circumstances appearing in this case, the finding of fact which

3-5

is complained of is not so clearly against the evidence as to necessarily require us to substitute another finding therefor. Nor, in view of all the facts and circumstances, are the conclusions of law and judgment so clearly wrong as to authorize us to set them aside in a case of this kind. We feel constrained to hold that the district court had a right to exercise some discretion in the matter, and that it exercised that discretion wisely. Were it not for the humane provisions of section 2995 aforesaid, under which complete justice may be done without invading or disregarding the rights and best interests of all concerned in this most unfortunate family drama, we should long hesitate before affirming the judgment. In view, however, of what has been said, we do not feel justified in reversing the judgment, and hence it should be, and accordingly is, affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.